```
 1                  UNITED STATES DISTRICT COURT

 2                     DISTRICT OF CONNECTICUT

 3   - - - - - - - - - - - - - -  x
                                  :
 4   J.S.R., by and through his   : Case No.
     next friend, Joshua Perry,   : 18CV1106(VAB)
 5                                :
                    Plaintiff,    :
 6         vs.                    :
                                  :
 7   JEFFERSON B. SESSIONS, III,  : 915 Lafayette Blvd
     ET AL,                       : Bridgeport, CT
 8                                : July 3, 2018
                    Defendant.    :
 9   - - - - - - - - - - - - - -  X

10            TRANSCRIPT OF TELEPHONE CONFERENCE

11   BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.

12
     APPEARANCES:
13   FOR THE PLAINTIFF:        MICHAEL J. WISHNIE, ESQ.
                               MUNEER I. AHMAD, ESQ.
14                             Jerome N. Frank Legal
                               Services - Wall St
15                             Yale Law School
                               127 Wall Street
16                             New Haven, CT 06511

17
     FOR THE DEFENDANT:        MICHELLE McCONAGHY, ESQ.
18                             JOHN HUGHES, ESQ.
                               U.S. Attorney's Office
19                             157 Church Street
                               New Haven, CT 06510
20

21

22

23              Sharon Montini, RMR, FCRR
                    915 Lafayette Blvd
24                 Bridgeport, CT 06604
                  Official Court Reporter
25
```

```
                APPEARANCES CONTINUED


 ALSO PRESENT:              MARISOL ORIHUELA
                            JOSH PERRY
                            JOANNE LEWIS
                            MASSIEL ZUCCO-HIMMELSTEIN
```

1  THE COURT: Good morning. Hold on one
2  second.
3  All right, we're here in R. v. Sessions.
4  Will counsel please state their appearances for the
5  record.
6  MR. WISHNIE: Good morning, your Honor.
7  For plaintiff petitioner, Mike Wishnie, Jerome Frank
8  Legal Services Organization. I have a number of
9  people on the phone with me. None of them have yet
10 filed appearances, but I wanted to advise the Court.
11 There is Marisol Orihuela and several students from
12 the clinic that are on the phone, as well as Josh
13 Perry, who is the next friend and counsel, Joanne
14 Lewis, and Massiel Zucco from Connecticut Legal
15 Services.
16 THE COURT: All right, who do we have
17 for the defendants?
18 MS. McCONAGHY: Michelle McConaghy for
19 the defendants, your Honor, and with me is John
20 Hughes.
21 THE COURT: All right. Good morning to
22 you, Ms. McConaghy, Mr. Hughes.
23 All right. So, plaintiff's counsel, you
24 asked for this call. What do you all wish to do?
25 MR. WISHNIE: Yes, thank you very much.

```
 1   And thank you for scheduling this so promptly.
 2   Briefly, the Court I think is familiar with the
 3   situation.  There are two children in Connecticut
 4   who have been forcibly separated from their parents
 5   who are now detained in Texas.  The children are not
 6   related.  The defendants' conduct has been
 7   reprehensible, and before we filed suit they have
 8   taken no apparent steps to address the harm they
 9   have done.  Both children now suffer acute PTSD as a
10   direct result of the forcible separation from the
11   parents.  That's not my conclusion, that's the
12   conclusion of a team of child psychiatrists from the
13   Yale Child Study Center who evaluated each child
14   this weekend.
15               There are three things that we wanted to
16   raise with the Court today, and I am glad to take
17   each one in turn.
18               THE COURT:  Go ahead.
19               MR. WISHNIE:  The first is information.
20   We have almost no information about the
21   circumstances of the parents.  As you may have seen
22   in the face of each complaint, the girl, who is 14,
23   has had one conversation with her mother in nearly
24   50 days of confinement in Connecticut, and the boy
25   has had one conversation with his father -- he's
```

```
 1   only nine years old -- after three weeks in
 2   Connecticut.
 3             We would ask that the Court direct the
 4   government to immediately inform counsel for the
 5   children, their next friend, as to the status of any
 6   criminal or immigration proceeding pending or
 7   concluded against either parent.  We understand that
 8   the father of the boy is in Port Isabel, Texas.  We
 9   believe he was prosecuted for the misdemeanor
10   offense of illegal entry, pled guilty, was sentenced
11   to time served of a couple of days, and is now in
12   the custody of DHS.
13             We believe that the mother is confined
14   at La Salle County Detention Center, also in Texas,
15   and we have no information about whether she has
16   been or will be prosecuted criminally or through the
17   immigration process.
18             It may bear on the specific relief that
19   we are able to seek depending on the procedural
20   postures of those -- of each parent, as well as the
21   government's own plans whether to release each
22   parent as ordered by a district court in Washington
23   yesterday afternoon.  Both parents are eligible for
24   immediate consideration for release on parole.
25             So the first request, your Honor, is
```

1    that you direct the government to inform the Court
2    of the posture of any case that is pending against
3    each parent and the government's intentions as to
4    each parent, if any.
5              THE COURT:  Let's do this.  Actually,
6    because I know I have got R. v. Sessions, is R. v.
7    Sessions one child or are two children involved in
8    that case?
9              MR. WISHNIE:  One child, your Honor.  We
10   filed a second similar action which we attempted to
11   relate to the first action upon filing.  We were in
12   touch with the clerk's office and informed them that
13   it was a related matter to the first filing.  We
14   understand that the second filing was inadvertently
15   assigned by the clerk's office to Judge Haight, but
16   that Judge Haight may be in the process of honoring
17   the related case designation and transferring that
18   to you.  You, of course, would know more than we
19   would.
20             THE COURT:  Let me deal with the case I
21   have that I ordered the conference in just so I can
22   keep things clear.  If that case is transferred and
23   if the same counsel are involved, I can convene a
24   status conference in that other one.  But I do want
25   to keep them separate to the extent they are

```
 1   separate matters at this point.
 2             But I guess -- I understand about
 3   wanting information from the government at this
 4   point, but right now we have got a motion for a
 5   hearing to talk about filings, but I guess the other
 6   thing is, is it your intent to move for some sort of
 7   temporary or preliminary injunctive relief, which I
 8   guess that would -- at least for the Court that
 9   would be the vehicle in which we can sort of deal
10   with some of the requests that you are making, and
11   in the context of that, depending on what the
12   government says, that might be the framework in
13   which we can deal with some of those issues.
14             So what is your intention in that
15   respect?
16             MR. WISHNIE:  Yes.  Thank you, your
17   Honor.  That was the second topic that we wished to
18   address, which was, yes, we do intend to seek a TRO
19   or preliminary injunction on behalf of J.S.G, who is
20   the boy that -- the plaintiff before you.  And we
21   were hoping that the Court would set a very tight
22   briefing schedule on that.  We are prepared to move
23   and file briefs and supporting declarations,
24   including any medical expert declaration, promptly.
25   We could file it as early as Thursday, Thursday
```

```
 1   morning, and if the government were able to respond
 2   by Friday, or perhaps Monday, we hope that the Court
 3   might see us on Monday or Tuesday next week.
 4              The child is in bad shape.  I want to be
 5   very explicit about that.  He is in very bad shape
 6   and we think that the medical situation is quite
 7   urgent.
 8              THE COURT:  All right.  Understood.  So
 9   it sounds like you could file -- you would be able
10   to file a motion by Thursday.  That's fine.
11              So, Ms. McConaghy or Mr. Hughes, let me
12   hear from you all.  What is the government's
13   position about how quickly they'd be able to move,
14   and then the Court could certainly set a hearing
15   date and so forth.  But let me hear from you all.
16              MS. McCONAGHY:  Yes, your Honor.  First
17   of all, we just received this yesterday.  I
18   understand plaintiff's claim on how emergent it is,
19   but if it was that emergent they would have let us
20   know about these children when they learned about
21   them.  There is no way they drafted a 120-something
22   paragraph complaint in the morning and filed it by
23   10:30 in the morning and yesterday afternoon.  So I
24   would certainly be willing to accommodate the Court
25   and do a short briefing schedule, but I would need
```

1  until at least next Friday.  I know nothing as far
2  as factual about these children.  I have to work
3  with three different agencies to try to get
4  information.
5              MR. WISHNIE:  Your Honor, not that this
6  is the most important piece of this, but to be clear
7  on the record, we at the clinic received information
8  about both of these children approximately 2:00 p.m.
9  on Sunday afternoon and worked through the night to
10 file the first action by about 9:30 or 10:00 the
11 next morning, and then the second one in the
12 afternoon.  We did not in any way sit on our rights.
13             But more important than our schedule is
14 the health and welfare of the children here.
15             THE COURT:  Yes.  Let's -- go ahead, Ms.
16 McConaghy.
17             MS. McCONAGHY:  I agree.  I mean, I
18 think the welfare of the children is very important.
19 They claim that they've made requests for reasonable
20 accommodation.  I haven't seen that request, nor
21 does the facility have it.  And we're willing to
22 bring them to whatever psychological, medical,
23 whatever treatment they need, but to properly
24 respond I have to be able to develop the facts, and
25 I don't have any of the agencies at my fingertips,

1  especially this week because 90 percent of the
2  people aren't around, and factually I'm not sure I
3  can respond by Friday or early next week.
4               THE COURT:  All right.  Well, let me ask
5  you this, Ms. McConaghy.  It sounds as though in the
6  interim obviously there are things and arrangements
7  you and Mr. Wishnie -- I mean, we can set -- we can
8  deal with a proceeding, but obviously if there is
9  some interim issue that could be dealt with,
10 obviously you could be in contact with him to figure
11 out what interim measures could be done while a
12 proper hearing is conducted to figure out how to
13 resolve all of the underlying issues.  So I assume
14 now that you are all aware of it you could work with
15 Mr. Wishnie on that.
16              MS. McCONAGHY:  Absolutely we would do
17 that.
18              THE COURT:  All right. Let's do this.
19 So the plaintiffs will file something on Thursday.
20 Why don't we do this.  If I give -- I can set a
21 hearing -- let's have a hearing, and the government
22 will just have to see what they can do to address
23 any issues in the interim.  I can set a hearing for
24 Wednesday the 11th, and then what I will do is I'll
25 give the government until Tuesday the 10th at

```
 1   5:00 p.m. to respond to their filings.  We can meet
 2   at 11:30 on Wednesday, July 11th, and we'll see
 3   where things are.  If we need -- if you all are able
 4   to work things out and that would allow that timing
 5   to be moved, then that obviously would be fine, but
 6   let's work with that schedule.
 7            Mr. Wishnie, does that work for you?
 8            MR. WISHNIE:  Yes, your Honor.  Thank
 9   you for the schedule.  The third topic I hoped to
10   address was precisely what you raised, which are
11   interim measures.  While we will try to work
12   directly with the government on things like phone
13   communications between parents and children and
14   between the parents and our counsel, since we need
15   instruction from the parents about the relief to
16   seek on behalf of their minor children, there is one
17   interim measure that I do want to raise now, which
18   was the third and final topic.
19            We intend to request that the Court writ
20   both parents to Connecticut, to the courthouse, to
21   be present for that hearing on a writ ad
22   testificandum.  This is not a writ for release.  We
23   do not represent the parents and we're not seeking
24   their release in the case.  It is a writ to testify
25   to the Court as to their wishes for relief, if any,
```

1   the Court were to give.  And, in particular, there
2   is sort of a Sophie's Choice lurking in this case.
3   If the Court were inclined to grant relief, it could
4   take the form of reunification with the parent, but
5   in detention if the government refuses to release
6   the family, or, in the alternative, release of the
7   child only to a relative, such as an aunt who we are
8   working with to arrange.  Only the parent can
9   decide, with the child, whether detention together
10  in a family unit or freedom with a more distant
11  relative is appropriate.
12              So we do intend to request that the
13  Court writ the parents to Connecticut so that they
14  can at the courthouse meet with their children, meet
15  with their counsel, and then testify to the Court as
16  to their wishes.
17              THE COURT:  Let me do this.  I think you
18  should probably file the motion you want.  I'm not
19  going to, you know, say what I'm going to do.  I'll
20  have to look at it, look at the legal bases for
21  that, and figure out how I want to deal with that.
22              But, I don't know, does the government
23  have a view at this point, Ms. McConaghy?
24              MS. McCONAGHY:  They don't -- yeah, we
25  could definitely establish communications between

1  the children and the parents so that the parent and
2  the child can discuss -- Yale doesn't represent the
3  parents.  They are beyond the jurisdiction of the
4  court.  The whole argument is for their own privacy
5  rights and, therefore, we can't disclose anything
6  with respect to their status in immigration or
7  asylum applications that they've sought.  That's by
8  regulation.
9          THE COURT:  All right.
10         MS. McCONAGHY:  But we certainly -- your
11 Honor, I just want to at least advise the Court, and
12 I advised Mr. Wishnie of this, these children are
13 our part of a class certification under the
14 California decision.  It's a 30-day order for us
15 from June 26th to reunite families, and these two
16 plaintiffs are part of that class certification and
17 these children will be reunited by July 26th.
18         THE COURT:  All right.
19         MR. WISHNIE:  On that point, your Honor,
20 the class is that the parent, actually not children.
21 The children are not -- these and other children are
22 not part of the class.  Ms. McConaghy is correct, we
23 don't represent the parents, but they are necessary
24 witnesses, essential witnesses, to the hearing the
25 Court will hold next week.  That is the basis for

```
 1   the request.
 2              THE COURT:  All right.  Let's do this.
 3   Why don't you -- so why don't you file that and I
 4   will take that under advisement.  What I might do is
 5   -- it might be that portion of it -- is that going
 6   to be filed as well on Thursday?
 7              MR. WISHNIE:  Yes, your Honor, if not
 8   earlier.
 9              THE COURT:  Because we've got -- that I
10   think I might need to have -- just on that issue
11   about the notion of having the parents appear at the
12   July 11th hearing, I guess I might need a response
13   from the government -- sorry for the squeeze, but I
14   think I'll need a response from the government by
15   noon on Friday.  What I will try to do is try to
16   decide that by Friday evening, because if I made
17   some decision I certainly would want to have
18   government officials to be able to have a couple of
19   days to figure it out.  And just to be clear, I'm
20   not suggesting I'm going to do one thing or another,
21   I am just trying to think about logistics.
22              All right, is there anything else I need
23   to deal with?
24              MS. McCONAGHY:  Your Honor?
25              THE COURT:  Yes, Ms. McConaghy.
```

```
 1                    MS. McCONAGHY:  May I just comment on
 2      that?  I understand with respect to their request to
 3      have the parents there, but they're on behalf of the
 4      children seeking reunification with the parent.
 5      And, I mean, we'll certainly provide the response as
 6      the Court requested, but this -- and plaintiff's
 7      counsel are aware of this.  They attempted to do
 8      this in the Giammarco case and Judge Bryant
 9      determined there was no need to have a habeas
10      petition to have -- in a different situation, but to
11      testify in a state court hearing.
12                    THE COURT:  No, understood.  And it
13      sounds like those are -- like I said, I would rather
14      have all of this stuff in briefing, and it sounds
15      like if you have already addressed this issue
16      before, it actually means that you all will be able
17      to deal with it fairly quickly, and I will try to
18      deal with it quickly.  No, I think all of those
19      things I will consider, but obviously I am hearing
20      this for the first time, you know, a couple of
21      minutes ago.  But I appreciate sort of the heads up
22      on how the respective sides approach the issue.
23                    All right.  Is there anything else I
24      need to deal with at this time?
25                    MR. WISHNIE:  Nothing further from
```

```
 1   plaintiffs, your Honor.
 2               THE COURT:  All right.  So if something
 3   is transferred in this matter I will try to deal
 4   with that in due course.
 5               All right.  Anything further, Ms.
 6   McConaghy?
 7               MS. McCONAGHY:  No, your Honor.
 8               THE COURT:  All right.  Thank you very
 9   much.  I will issue an order consistent with our
10   discussion here today.  Have a good day and everyone
11   have a very happy Fourth of July holiday.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2           I certify that the foregoing is a correct
 3   transcript from the record of proceedings in the
 4   above-entitled matter.
 5
 6                                   7/5/18
 7                                    Date
 8
 9                          /S/   Sharon Montini
10                              Official Reporter
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```