# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

J.S.R., *by and through his next friends J.S.G. and Joshua Perry*, and V.F.B., *by and through her next friends A.B.A. and Joshua Perry*,

    *Plaintiffs*,

    v.

JEFFERSON B. SESSIONS, III, et al.,

    *Defendants*.

No. 3:18-cv-01106-VAB

## RULING AND ORDER ON MOTION FOR A PRELIMINARY INJUNCTION

On July 5, 2018, J.S.R. and V.F.B. ("Plaintiffs"), two children, who were separated from their parents after crossing this country's southern border, filed a motion for preliminary injunction against numerous federal government officials and entities[1] (collectively "Defendants" or the "Government"), seeking an Order that would "(1) enjoin[] Defendants from continuing to detain Plaintiffs J.S.R. or V.F.B., maintaining their separation from their parents, or delaying release to suitable sponsors; and (2) after parent and child confer, order[] Defendants to release J.S.R. and V.F.B. by July 13, 2018 to a suitable sponsor or to reunite with their respective parents, as directed by the Plaintiffs." Mot. for TRO at 1, ECF No. 17; Mot. for TRO

---

[1] The Defendants are: Jefferson B. Sessions III, Attorney General of the United States; Department of Homeland Security ("DHS"); Kirstjen Nielsen, Secretary of DHS; U.S. Customs and Border Protection ("CBP"); Kevin K. McAleenan, Commissioner of CBP; U.S. Immigration and Customs Enforcement ("ICE"); Ronald D. Vitiello, Acting Director of ICE; U.S. Citizenship and Immigration Services ("USCIS"); L. Francis Cissna, Director of USCIS; U.S. Department of Health and Human Services ("HHS"); Alex Azar, Secretary of the Department of Health and Human Services; Office of Refugee Resettlement ("ORR"); and Scott Lloyd, Director of ORR. Compl., ECF No. 1.

at 1, ECF No. 43. Defendants opposed the motion. ECF No. 46. The Court held a hearing on July 11, 2018. ECF No. 52.

For the following reasons, the motion for a preliminary injunction is **GRANTED IN PART AND DENIED IN PART**.

Recognizing, as all parties have, that the constitutional rights of J.S.R. and V.F.B. have been violated, and that irreparable harm has occurred as a result, the motion for a preliminary injunction is **GRANTED** and relief directed towards the effects of the constitutional violation suffered by these minor children, namely trauma or more precisely, Post-Traumatic Stress Disorder ("PTSD"), shall be provided.

At the upcoming hearing on **Wednesday, July 18, 2018 at 11:00 a.m.**, each party shall present a plan for addressing the children's PTSD not only up to and including family reunification, but also after it. Their respective parents, J.S.G. and A.B.A., are ordered to be at this hearing and the Court therefore will issue writs of habeas corpus *ad testificandum* to ensure their availability for testimony, to the extent warranted.

To the extent that J.S.R. and V.F.B. seek immediate reunification with their respective parents, the motion for a preliminary injunction is **DENIED**. As further discussed below, such relief is being addressed by another court. Indeed, these parents are class members and therefore parties in that other case and any such relief should be obtained in and through that proceeding.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

A.    **Facts[2]**

Dr. Andrés Martin, M.D., M.P.H., a child psychiatrist with "more than twenty years of experience interviewing, assessing, and treating vulnerable children, including survivors of

---

[2] The facts are based on the parties' written submissions, as well as testimony and oral argument at the July 11th preliminary injunction hearing.

trauma," testified before the Court on July 11th. *See* Decl. of Andrés Martin ("Martin Decl."), Mot. for TRO, ECF No. 17-5 (listing numerous credentials and publications). Dr. Martin, a professor of child psychiatry at the Child Study Center at Yale University School of Medicine, is also the Medical Director of the children's Psychiatric Inpatient Service at Yale-New Haven Children's Hospital, a sixteen-bed in-patient unit for children under age fourteen with serious psychopathology. The Court found him to be qualified as an expert in child psychiatry.

Dr. Martin and a team of child psychologists interviewed J.S.R. and V.F.B. in Spanish on July 1, 2018. Using two standardized instruments, they diagnosed both children with post-traumatic stress disorder ("PTSD"). The following facts are based on Dr. Martin's testimony and other information submitted by the parties. No other witnesses were called at the hearing, although the Court considered the various affidavits and other documents submitted by the parties.

1.     **J.S.R.**

Dr. Martin testified that J.S.R., a nine-year-old boy, fled with his father from Honduras after his grandparents were murdered and the body of a family friend was left in his backyard. While in Honduras, J.S.R. had witnessed gang violence, including witnessing his grandmother dead, with her body tossed in a river and her neck split open. He also saw the dead body of someone he knew from his neighborhood dropped in his backyard. That second murder was blamed on his father by gang members who had made repeated threats to his father. Dr. Martin reported that, as far as J.S.R. knew, his father was being framed for the murder.

J.S.R. has a strong and loving bond and relationship with his father, whom J.S.R. identifies as the key protector and role model in his life. While the two were traveling, his father would find work so that he could bring home food for J.S.R., and J.S.R. reported to Dr. Martin

that there would be times when his father did not eat so that J.S.R. could eat. Dr. Martin explained that the trip from Honduras to Texas was not itself a particularly traumatic event for J.S.R.; it was long, arduous, hot, and there was hunger, but it was not itself traumatic.

J.S.R. and his father arrived in Hidalgo, Texas, and were confined in freezing conditions—J.S.R. described being held in an "ice box" or "freezer"—and were eventually transferred to an immigration detention center. J.S.R. described to Dr. Martin being puzzled and surprised by the last time that he saw his father. He explained being told that his father was going to sign some paperwork and that he would be right back, but he never returned.

According to Dr. Martin's testimony, J.S.R. experienced being kept in a windowless cage with other young children for approximately four days while he was being transferred to the custody of the Office of Refugee Resettlement ("ORR"). He is now with Noank Community Support Services, Inc. ("Noank"), in Groton, Connecticut. His father is now located at a detention center in Texas. Before the filing of this lawsuit, J.S.R. had spoken with his father two times over the three weeks at Noank.

Dr. Martin reported that J.S.R. does not sleep well, does not trust adults, and is depressed and tearful. He is terrified of the prospect of returning to Honduras, because of his fear of gang violence there and the harm that could befall his father or his family.

Dr. Martin successfully employed two standardized instruments commonly used for a diagnosis of PTSD with J.S.R. The first, the trauma health questionnaire ("THQ"), is a list of a wide array of potentially traumatic events. J.S.R. scored 14 out of a total of 23 points on that scale. The second, the childhood post-traumatic stress symptom scale, quantifies the symptoms of PTSD and has a maximum score of 51, with a score of 15 or higher qualifying a child for a diagnosis of PTSD. According to Dr. Martin, J.S.R. scored 38, which Dr. Martin described as an

extraordinarily high score. Dr. Martin testified that J.S.R. has a full-blown acute PTSD symptomatology, on top of a chronic, traumatic background, resulting in a more pronounced trauma.

### 2. V.F.B.

According to Dr. Martin, V.F.B., a fourteen-year-old girl, fled with her mother from El Salvador after her step-father was killed by a gang. They entered the United States mid-May 2018, and reportedly were held in freezing conditions near the border while they awaited removal proceedings.

Dr. Martin observed that V.F.B. has a close-knit relationship with her mother. She has learned crafting skills from her mother, and they have survived together through the murder of V.F.B.'s step-father and an arduous trek from El Salvador to Texas. Dr. Martin explained that, like J.S.R.'s journey, V.F.B.'s trip itself was not especially traumatic; the separation from her mother, however, did result in considerable trauma.

One day at the detention center, V.F.B. went to take a shower. When she returned, her mother was gone.

On May 16, 2018, the Government transferred V.F.B. to ORR custody and detained her in Noank. Her mother is in a detention center in Texas. During the six weeks preceding this litigation, V.F.B. had spoken with her mother once. She has since had more contact.

On July 1, 2018, Dr. Martin's team interviewed V.F.B. and found her affect to be blunt and flat. Uncomfortable talking about the material, she would hide her face behind her arm or shy away from the interviewer. During the interview, she cried often.

The team attempted to apply the same two standardized instruments with V.F.B. On the childhood post-traumatic stress symptom scale, V.F.B. scored 21 out of 51. A score of 15 or

above is considered consistent with PTSD. The team had more difficulty using the trauma health questionnaire because V.F.B. had difficulty answering many questions and often avoided them. Dr. Martin considered her so distressed that she did not understand certain simple concepts and therefore could not answer the questions coherently.

Dr. Martin expressed grave concern for the children if they are not reunited with their families, and he testified that there likely will be both short-term and long-term physical and mental health consequences for the children. He explained that symptoms of trauma, including sleeplessness, depression, anxiety, tearfulness, and hopelessness, will not remit on their own, and that the children are at risk for mental health consequences, including higher rates of depression, anxiety, symptoms of PTSD, substance abuse disorders, and more. They are also at a higher risk of physical conditions, such as cardio-vascular disease, diabetes, and even cancer.

Dr. Martin recommended that the most important remedy for both children would be to take away the traumatic stressor, J.S.R.'s separation from his father and V.F.B.'s separation from her mother. Dr. Martin also recommended that they be reunified in a non-stressful environment, where they could have freedom of movement, space, safety, and access to schools. He also recommended that the children have ongoing trauma-informed psychotherapy and care. He expressed that the timing of the reunification mattered: that the children had already been separated from their parents too long, and that every day adds to the gravity of their situation.

**B.  Procedural History**

On July 2, 2018, J.S.R. and V.F.B. each filed Complaints and petitions for habeas corpus. Compl., ECF No. 1. Each plaintiff also filed a motion for a hearing. ECF No. 8. On July 3, 2018, the Court granted the motion, ECF No. 9, and held a telephonic status conference. ECF No. 12.

After the conference, the Court issued a scheduling order that set a briefing schedule and a date for a hearing on an anticipated motion for a preliminary injunction. ECF No. 13.

On July 5, 2018, J.S.R. and V.F.B. each filed a motion for a temporary restraining order or a preliminary injunction. ECF No. 17; ECF No. 43. That same day, J.S.R. and V.F.B. each filed a motion for a writ of habeas corpus *ad testificandum*, seeking to compel the Government to produce J.S.R., V.F.B., and their parents at the July 11th hearing. ECF No. 18.

The Court granted in part and denied in part the motion for a writ of habeas corpus *ad testificandum*. Order on Motion for Writ, ECF No. 27; Supplemental Order on Motion for Writ, ECF No. 37. The Court denied the motion to command the in-person appearance of J.S.R.'s father and V.F.B.'s mother on July 11th. Order on Motion for Writ at 2. The Court required, however, that the Government make appropriate accommodations to ensure that the parents could speak with the children on July 9th and July 10th, and so that the parents could appear at the July 11th hearing through a videoconference. *Id.* at 2, 8. The Court also commanded the presence of J.S.R. and V.F.B. in person at the hearing. Supp. Order on Motion for Writ at 2.

The Court also noted that the Government is purportedly in the process of complying with an Order from the Southern District of California, which, as relevant here, requires United States Immigration and Customs Enforcement ("I.C.E.") to, "[u]nless there is a determination that the parent is unfit or presents a danger to the child, or the parent affirmatively, knowingly, and voluntarily declines to be reunited with the child . . . reunify all Class Members [i.e., parents] with their minor children age five (5) and over within thirty (30) days of the entry of this Order." Order on Motion for Writ at 3–4 (citing *Ms. L. v. U.S. Immigration and Customs Enforcement ("I.C.E.")*, No. 18CV0428 DMS (MDD), 2018 WL 3129486, at *1 (S.D. Cal. June 26, 2018) (the "California Order")). The Order applies to the following class: "All adult parents who enter

the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by [the United States Department of Homeland Security ('DHS')] and (2) have a minor child who is or will be separated from them by DHS and detained in the [Office of Refugee Resettlement ('ORR')], ORR foster care, or DHS custody absent a determination that the parent is unfit or presents a danger to the child." *Ms. L.*, 2018 WL 3129466, at *3 n.5.

The Court ordered the Government to facilitate communication between J.S.R., V.F.B., their counsel, and their parents, on Monday, July 9th, Tuesday, July 10th, and Wednesday, July 11th. Order on Motion for Writ at 7. The Court also stated that, if it denied J.S.R.'s and V.F.B.'s motions for preliminary injunctions, but the Government did not comply with the California Order by July 26, 2018, the Court would hold another hearing on July 27, 2018, at 10:00 a.m., and a writ of habeas corpus *ad testificandum* would issue and the Government would be required to make arrangements to transport J.S.R.'s father and V.F.B.'s mother to that hearing. *Id.* at 8.

The Court held another telephonic status conference on July 9, 2018. ECF No. 32. Plaintiffs orally moved to consolidate the two cases, *J.S.R. v. Sessions*, No. 3:18-cv-1106, and *V.F.B. v. Sessions*, No. 3:18-cv-1110. ECF No. 33. The Court granted the motion and consolidated the cases into *J.S.R and V.F.B. v. Sessions*, No. 3:18-cv-1106. ECF No. 35.

Plaintiffs also filed motions for J.S.R.'s father, J.S.G., and V.F.B.'s mother, A.B.A., respectively, to appear as each child's next friend. ECF Nos. 48, 49.

On July 11, 2018, the Court held a hearing on the motion for a preliminary injunction. The parents appeared through video teleconference, and the Court granted Plaintiffs' motions to add each parent, in addition to Joshua Perry, as each child's next friend. ECF Nos. 53, 54.[3]

---

[3] Before their parents were added as their next friends, the children were represented by and through their next friend, Joshua Perry, who is the Deputy Director of Connecticut Legal Services. *See* ECF No. 18-4. On July 9, 2018,

## II.    STANDARD OF REVIEW

The Second Circuit applies similar standards for temporary restraining orders and preliminary injunctions, "and district courts have assumed them to be the same." *See Foley v. State Elections Enforcement Comm'n*, No. 3:10CV1091 (SRU) (D. Conn. July 16, 2010), 2010 WL 2836722, at *3 (quoting *Allied Office Supplies, Inc. v. Lewandowski*, 261 F. Supp. 107, 108 n.2 (D. Conn. 2005)). Preliminary injunctive relief is an extraordinary remedy and is never awarded as a matter of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *New York Progress and Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20); *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) ("In most cases, a party seeking to obtain a preliminary injunction must establish that it will suffer irreparable harm in the absence of an injunction and demonstrate either (1) 'a likelihood of success on the merits' or (2) 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a

the Court issued an Order requesting that Plaintiffs more fully address Mr. Perry's status as the children's next friend. ECF No. 36; *see also* Fed. R. Civ. P. 17(c)(2) (providing that a minor "who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem"); *Whitmore v. Arkansas*, 495 U.S. 149, 163–64 (1990) (explaining that burden is on "next friend" to establish "First . . . why the real party in interest cannot appear on his own behalf to prosecute the action . . . . Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate," and that some courts also require the "next friend" to "have some significant relationship with the real party in interest.").

Plaintiffs moved to add J.S.R.'s father, J.S.G., and V.F.B.'s mother, A.B.A., as their next friends, and at the hearing, Plaintiffs explained that they intended to add the parents in addition to Joshua Perry. The Court granted the motions, and with the additional presence of the children's parents as next friends, the question of representation has been properly addressed. *Cf. T.W. by Enk v. Brophy*, 124 F.3d 893, 897 (7th Cir. 1997) ("[T]he next friend must be an appropriate alter ego for a plaintiff who is not able to litigate in his own right . . . ordinarily the eligible will be confined to the plaintiff's parents, older siblings (if there are no parents), or a conservator or other guardian, akin to a trustee; that persons having only an ideological stake in the child's case are never eligible; but that if a close relative is unavailable and the child has no conflict-free general representative the court may appoint a personal friend of the plaintiff or his family, a professional who has worked with the child, or, in desperate circumstances, a stranger whom the court finds to be especially suitable to represent the child's interests in the litigation.").

balance of the hardships tipping decidedly' in the movant's favor.") (quoting *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 779–80 (2d Cir. 1994)).

A court will presume that a movant has established irreparable harm in the absence of injunctive relief if the movant's claim involves the alleged deprivation of a constitutional right. *See Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973)). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Johnson v. Newport Lorillard*, No. 01 Civ. 9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003).

## III.    THE PARTIES' ARGUMENTS

### A.    J.S.R. and V.F.B.

Plaintiffs seek a preliminary injunction on the grounds that forcibly separating the children from their parents: (1) violates the children's substantive and procedural Fifth Amendment due process rights; (2) denies the children's equal access to the asylum program and constitutes disability discrimination under the Rehabilitation Act; (3) violates the Administrative Procedure Act; (4) and deprives the children of equal protection under the laws. Mot. for TRO at 10. Plaintiffs argue that, "[b]ecause the children are likely to succeed on the merits on these four claims, and because the remaining applicable factors weigh in favor of Plaintiffs, this Court should grant J.S.R. and V.F.B. a temporary restraining order or, in the alternative, preliminary injunctive relief." *Id.*

First, Plaintiffs argue that J.S.R. and V.F.B., as persons in the United States, have been deprived of their substantive due process rights under the Fifth Amendment of the United States

Constitution. Mot. for TRO at 10–11. Plaintiffs argue that they have "a protected liberty interest in being reunited with their parents." *Id.* at 11. Plaintiffs also argue that "the government lacks any legitimate, let alone compelling, interest in the separation of these children from their families." *Id.* at 11–12.

Plaintiffs argue that "[d]ue process forbids the government from separating parents and their children unless there is a case-specific determination that separation is in the best interests of the child—as, for instance, when the child is in danger or the parent is shown to be unfit." *Id.* at 12. Plaintiffs argue that there has not been and could not be a case-specific determination that J.S.R. and V.F.B. should have been separated from their parents, and that instead, the separation has caused "significant and on-going trauma." *Id.*

Plaintiffs also argue that they are likely to succeed on their claim that Defendants have violated J.S.R. and V.F.B.'s procedural due process rights under the Fifth Amendment because they were forcibly separated from their parents "without any—let alone the constitutionally-required—process that is due before families can be indefinitely split up." Mot. for TRO at 13. Plaintiffs argue that procedural due process would have required a pre-deprivation hearing before the Government could separate children from their parents, given "the enormous stakes of removing a child from the care of their parents and placing them into the custody of the state." *Id.* at 14. Here, Plaintiffs argue, "Defendants failed to provide *any* process at all, before or after, tearing J.S.R. and V.F.B. from their parents." *Id.* Plaintiffs argue that, "[a]t the *very least*, procedural due process requires affected parties be given notice and a set of procedural opportunities to protect their liberty interests." *Id.*

Plaintiffs also argue that, by separating these children, who are currently suffering from PTSD, from their parents, the Government has "further limited the children's ability to access . .

. the most crucial support the children need at this moment—their parents—and thereby is unlawfully denying them equal access to a federal program." Mot. for TRO at 15; *see* 29 U.S.C. § 794(a). Plaintiffs argue that the children are suffering from trauma-related mental disabilities, both as a result of their forced separations from their parents and also as a result of trauma they endured before entering the United States.

Plaintiffs argue that Defendants "are violating the Rehabilitation Act through their failure to provide J.S.R. and V.F.B. reasonable accommodations in the asylum, removal, and sponsor placement processes." *Id.* at 18. Plaintiffs argue that "Defendants have failed to implement available and reasonable accommodations, such as reuniting the children with their parents and releasing them from detention." *Id.* Plaintiffs also argue that "Defendants intentionally are preventing the children from turning to their parents for counsel and assistance in coping with, processing, and speaking about the experiences of violence, persecution, and loss that contributes to their disability and form the basis for their asylum claims." *Id.* at 19.

Plaintiffs also argue that Defendants' actions violate the Administrative Procedure Act ("APA") because Defendants have failed to give adequate reasons for their actions, and Defendants have instead arbitrarily and capriciously separated the children from their parents, sacrificing their "important and fundamental rights" without a legitimate reason for doing so. *Id.* at 19–21.

Finally, Plaintiffs argue that Defendants' decision to separate the children from their parents was driven by animus against individuals of Latino ethnicity. *Id.* at 23. Plaintiffs argue that "Defendants' coerced family separation policy, while facially neutral, violates equal protection for two reasons: (1) it was applied in a discriminatory fashion, and (2) it was motivated by discriminatory animus and resulted in a discriminatory effect." *Id.* at 24. Plaintiffs

argue that the policy discriminated against people in the "Northern Triangle" of Central America, including Honduras and El Salvador, the countries from where J.S.R. and V.F.B. came, respectively. *Id.* They also assert that "the consistently racialized statements of the president and his top advisers demonstrate that their family separation policy was motivated by animus, and the evidence shows that it resulted in a discriminatory effect." *Id.* at 25.

### B.     The Government

Defendants object to Plaintiffs' motion for a preliminary injunction. Defendants argue that Plaintiffs' lawsuits, which seek reunification by July 13, 2018, interfere with the Government's ongoing effort to implement the relief ordered in *Ms. L.*, 2018 WL 3129486. Opp. to Mot. for TRO at 25–26. Defendants argue that there is substantial overlap with *Ms. L.*, and that "[d]uplicative litigation is disfavored in the federal courts because of the risk of inconsistent judgments, as well as the waste of the parties' and judicial resources." *Id.* at 27. Defendants argue that they have "already undertaken extensive efforts towards compliance with the preliminary injunction order." *Id.* at 29.

Defendants "do not dispute plaintiffs' allegation that their separation from their parents was, and remains, traumatic," and instead argue that "Plaintiffs are receiving excellent care, both medical and otherwise, in the most least restrictive environment available." *Id.* at 30. Defendants represent that they are "willing to comply with any reasonable accommodation requests made on behalf of the children," but that they "have received no accommodation requests relating to providing care to the Plaintiffs." *Id.*

Defendants explain that Noank is licensed by the State of Connecticut to provide residential care to children, and that it is "set up much like a group home and is located near the Mystic River." *Id.* at 31. Defendants state that it is staffed "with a teacher, medical coordinator,

clinician, case manager, supervisor, director as well as 8 youth care workers," that the children attend school, and that they "engage in a variety of recreational activities daily at local parks in the community or at the local YMCA." *Id.* Defendants assert that J.S.R. plays soccer and "is also a great artist and is constantly surprising his therapists with pictures he has drawn." *Id.* Defendants assert that V.F.B. is social with other teenage girls, does art projects, and plays basketball. *Id.* Defendants assert that both children are in "excellent health," neither takes medication, and "the medical coordinator has not reported any concerns that the children have any mental health conditions which warrant psychiatric treatment or psychotropic medications." *Id.* Defendants represent that the children receive weekly individual counseling, semi-weekly group therapy, and that they frequently drop in to say hello to their therapist without an appointment. *Id.* at 32.

Defendants argue that, according to the "mental health clinician working directly with Plaintiffs, neither child has demonstrated severe emotional distress or physical reactions as a result of being separated from their parents," and that "[t]here are likewise no recent reports of nightmares, flashbacks, or depressed mood." *Id.* at 33–34. Defendants argue that, "[w]hile the Plaintiffs at times are appropriately sad and tearful when they speak to their respective parents, and would, of course, like to be reunified with their parents or another relative as soon as possible, they are now adjusting well to life at Noank and have expressed some joy and happiness in taking part in ordinary recreational activities provided for the children at the shelter." *Id.* at 34.

Finally, Defendants represent that the Government is in the process of reuniting J.S.R. and V.F.B., and will continue to make efforts to comply with the California Order. Specifically, one of V.L.B.'s aunts "submitted a sponsorship application yesterday, July 9, 2018," but the

"application is incomplete because Plaintiff V.F.B.'s mother has not yet decided whether to sign a consent form in support of the application." *Id.* at 35–36. And, the Government represents, "agents were working on Plaintiff J.S.R.'s reunification with his father prior to the filing of this litigation and the agents have continued working on this process[.]" *Id.* at 36.

## IV.    DISCUSSION

Both parties in this case have recognized that the constitutional rights of J.S.R. and V.F.B. have been violated, and that irreparable harm has and will continue to result. *See, e.g.*, Mot. for TRO at 12 (arguing that family separation is unconstitutional and that it has caused "significant and on-going trauma" to J.S.R. and V.F.B.); *see also* Opp. to Mot. for TRO at 25–26 (noting that the Government is implementing, not challenging, the relief ordered by the Southern District of California in *Ms. L.*); *id.* at 30 (conceding that the children's "separation from their parents was, and remains, traumatic").

The Government argues, however, that the Court should deny preliminary injunctive relief so that the Government has a meaningful opportunity to comply with the California Order and reunite the children affected by that Order, including J.S.R. and V.F.B., by July 26. *Id.* at 36.

For the following reasons, the Court agrees in part and disagrees in part. The Court grants preliminary injunctive relief to address the constitutional injury that the parties agreed occurred, namely the children's trauma as a result of their unconstitutional separation from their parents. The Court denies preliminary injunctive relief requiring the immediate reunification of the children with their parents, a matter before another court.

### A.    Likelihood of Success on the Merits

First, the Court finds that Plaintiffs are likely to succeed on the merits of their claim that J.S.R. and V.F.B. suffered a constitutional violation. The Government has not challenged the

California Order, and the parties agree that a constitutional violation occurred when the Government separated children from their parents—both on the basis of substantive due process, as the separation deprived the children of their right to family integrity, and procedural due process, as J.S.R. and V.F.B. were given no notice and no fair opportunity for a hearing before being separated from their parents. *See Ms. L.*, 2018 WL 3129486, at \*8 ("This practice of separating class members [i.e., migrant parents] from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their due process claim."); *cf. Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (noting "absence of dispute reflect[ing] historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment"); *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) ("The Fourteenth Amendment imposes a requirement that except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child form his or her parent's custody may be effected."); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

The Court agrees that the Government violated J.S.R.'s and V.F.B.'s constitutional rights by forcibly removing them from their parents without due process of law. The Government failed to provide the children with notice or a hearing, instead taking their parents, while distracting the children. *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 261 (1987) ("Though the required procedures may vary according to the interests at stake in a particular context 'the fundamental requirement of due process is the opportunity to be heard at a meaningful time and

in a meaningful manner.") (quoting *Mathews*, 424 U.S. at 333). Even now, the Government has not established a compelling reason for depriving the children of their family integrity—depriving them of their primary and only consistent source of support—or that its policy was narrowly tailored to achieve that compelling reason. *See Stanley v. Illinois*, 405 U.S. 645, 658 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment [and] the Equal Protection Clause of the Fourteenth Amendment.") (internal citations omitted); *see also Bohn v. Cty. of Dakota*, 772 F.2d 1433, 1435 (8th Cir. 1985) ("The privacy and autonomy of familial relationships involved in a case like this are unarguably among the protectable interests which due process protects. We can conceive of no more important relationship, no more basic bond in American society, than the tie between parent and child.").

The Court's conclusion is also supported by the California Order. Although that case considered a class of parents, not children, it held that the parents' constitutional rights were violated when they were separated from their children, and that this constitutional violation required reunification. *Ms. L.*, 2018 WL 3129486, at *11 ("What Plaintiffs do seek by way of the requested injunction is to uphold their rights to family integrity and association while their immigration proceedings are underway. This right, specifically, the relationship between parent and child, is constitutionally protected and well established.") (internal quotation marks and citations omitted).

Obviously, the children will be beneficiaries of that remedy, and this Court acknowledges that the harm that the Government caused to the children is connected with the harm that the Government caused to the parents, as the Southern District of California identified. *Id.* at *9 (explaining that family separation policy has caused irreparable harm to parents partly because of

pain inflicted on their children, and noting that "parents, however, are not the only ones suffering from the separations," and that "there is ample evidence that separating children from their mothers or fathers leads to serious, negative consequences to children's health and development," including higher rates of anxiety, depression, PTSD, and more). The California Order therefore, while it did not directly address the children's constitutional harm, has a collateral impact on the children and on this Court's approach to this case.

The Court therefore finds that Plaintiffs are likely to succeed on the merits of their constitutional claim.

### B.       Irreparable Injury

Having established that a constitutional claim has occurred, Plaintiffs are entitled to a presumption that an irreparable injury has occurred. *See Mitchell*, 748 F.2d at 806 ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2948, at 440 (1973)). Here, Plaintiffs have also offered more than enough evidence to establish that the Government's actions traumatized J.S.R. and V.F.B., therefore establishing an irreparable injury. *See Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989) ("To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent.") (internal quotation marks and citation omitted); *see also Levia-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) ("In addition, as we have previously held, '[o]ther important [irreparable harm] factors include separation from family members, medical needs, and potential economic hardship.'") (quoting *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001) (*en banc*)).

Dr. Martin offered evidence that J.S.R. struggles to sleep, distrusts adults, and is depressed and tearful. Dr. Martin found that J.S.R. is suffering from PTSD, and that he had an extraordinarily high score on the childhood post-traumatic stress symptom scale, as a result of the acute trauma of being separated from his father, an adult with whom he has a loving, supportive relationship. Dr. Martin offered evidence that V.F.B. is tearful, avoidant, and has a blunted and flat affect. She had a score consistent with PTSD on the childhood post-traumatic stress symptom scale, and Dr. Martin explained that she was so distressed that she had trouble answering many of his questions. Even if this Court did not presume irreparable harm, as it should, this evidence firmly establishes it.

As a result, the Court finds that Plaintiffs likely would succeed on the merits of their motion for a preliminary injunction, and that Plaintiffs established that the Government violated J.S.R.'s and V.F.B's constitutional rights to due process and caused them irreparable harm. *See Walsh*, 733 F.3d at 486 (noting that, first, the plaintiff "must establish that he is likely to succeed on the merits, [and] that he is likely to suffer irreparable harm in the absence of preliminary relief").

### C.     Balance of the Equities and the Public Interest

Finally, the Court must determine whether "the balance of equities tips in [Plaintiffs'] favor" and whether "an injunction is in the public interest." *Walsh*, 733 F.3d at 486; *see also Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."). "As with irreparable injury, when a plaintiff establishes 'a likelihood that Defendants' policy violates the U.S. Constitution, Plaintiffs have also established that both the

public interest and the balance of the equities favor a preliminary injunction.'" *Ms. L.*, 2018 WL 3129486, at *10 (quoting *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014)).

Defendants argue that, although Plaintiffs have suffered a constitutional violation, and although the trauma of the unconstitutional separation has harmed them, the balance of the equities and the public interest disfavor this Court issuing a preliminary injunction because that order could interfere with the Government's ability to comply with the relief ordered in *Ms. L.*, 2018 WL 3129486. Opp. to Mot. for TRO at 25–26. Defendants also argue that the Court should avoid entering an order duplicative of the California Order. *Id.* at 27 ("Duplicative litigation is disfavored in the federal courts because of the risk of inconsistent judgments, as well as the waste of the parties' and judicial resources.") (citing *Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir. 1988)).

The Court agrees with Defendants, but only to the extent that the California Order will provide relief for J.S.R.'s and V.F.B.'s constitutional harm through reunification. This Court thus will avoid duplicating the California Order and the relief provided by that court.

But the California Order addresses a constitutional harm suffered by a class of parents—not the children who are Plaintiffs here. The cases that Defendants cite, admonishing courts to avoid duplicative litigation, therefore are distinguishable because they involve cases "where a complaint involving the same parties and issues has already been filed in another district." *Barapind*, 225 F.3d at 1109; *see also Gillespie*, 858 F.2d at 1102–03 ("[T]he individual class member should be barred from pursuing his own individual lawsuit that seeks equitable relief within the subject matter of the class action.") (quoting *Green v. McKaskle*, 770 F.2d 445, 446–47 (5th Cir. 1985)). And even though J.S.R. and V.F.B. will benefit from the remedy required by

the California Order, that court necessarily considered only the harms suffered by the class of Plaintiffs before it—parents—and not the two Plaintiffs before this Court—J.S.R. and V.F.B.

The Court therefore finds that the balance of the equities and the public interest both favor a preliminary injunction, to the extent that it can address the particular harms that J.S.R. and V.F.B. have suffered, and to the extent that those harms are not already being remedied by the California Order. *See, e.g.*, *Milliken v. Bradley*, 418 U.S. 717, 738 (1974) ("Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs."); *id.* at 744 ("The controlling principle consistently expounded in our holdings is that the scope of the remedy is determined by the nature and extent of the constitutional violation.").

At the July 11th hearing, Plaintiffs indicated that, although they wanted immediate relief in the form of reunification and release for J.S.R. and V.F.B. and their parents, if the Court were not inclined to grant that relief, they would request that the Court order continued daily videoconferences with the parents, order the Government to provide a clear timeline so that the parents and the children could know what to expect, and order psychotherapy for the children.

J.S.R. and V.F.B. are entitled to relief to address the consequences of the Government's unconstitutional separation of them from their parents, a harm, based on Dr. Martin's unrebutted testimony, likely to continue even after family reunification.[4]

At the upcoming status conference on **July 18, 2018 at 11:00 a.m.**, the parties shall address the form of this relief for J.S.R. and V.F.B., both before and after family reunification.

_____

[4] To the extent that Plaintiffs also sought relief under the Rehabilitation Act, 29 U.S.C. § 794(a), the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and the Equal Protection Clause of the Fourteenth Amendment, the Court need not reach those claims because the only remedies that the Court will address are related to the trauma that Plaintiffs endured, which is being adequately remedied by the Court's decision based on the Due Process Clause of the Fifth Amendment. To the extent that Plaintiffs seek reunification and release under any of these alternative theories, as discussed above, the Court will not duplicate relief for those who are a part of a class action governed by the California Order.

The Court will issue writs of writs of habeas corpus *ad testificandum* to have the parents of J.S.R. and V.F.B. present for this proceeding. The Court will also issue writs of habeas corpus *ad testificandum* to have J.S.R. and V.F.B. present for the proceeding. As noted in the Court's previous order, "[i]f the Court determines at the July 11th hearing that immediate constitutional relief is warranted before July 26th or that additional proceedings are necessary before July 26th and these proceedings require the physical presence of J.S.R.'s father [or V.F.B.'s mother], then the Court will consider such relief at that time." Order at 7, ECF No. 27; *see also V.F.B. v. Sessions*, No. 3:18-cv-1110, Order at 7, ECF No. 18 (regarding V.F.B. making the same pronouncement). Because this proceeding will now address specific constitutional relief related to the well-being of the children, the Court believes it necessary to have them and their parents there, in the event any testimony is necessary from either of the children or their respective parents.

Additionally, while modern technology provides opportunities for the virtual presence of parties and witnesses at court proceedings beyond what historically had been possible, the logistical challenges presented by the July 11th preliminary injunction hearing make clear the necessity of their physical presence, at least for the July 18th proceeding.

## V.    CONCLUSION

The Court therefore orders the following:

- The Court will hold a status conference on **July 18, 2018, at 11:00 a.m.**, in Courtroom Two, 915 Lafayette Boulevard, Bridgeport, Connecticut.

- At the July 18th hearing, each party shall present a plan for addressing the children's trauma as a result of the Government's unconstitutional separation of the children from their parents.

- The Court **GRANTS** Plaintiffs' motion for writs of habeas corpus *ad testificandum* for J.S.G. and A.B.A. ECF No. 56. Those writs will follow in a subsequent order. The parents shall be brought to Courtroom Two, 915 Lafayette Boulevard, Bridgeport,

Connecticut, at 9:00 a.m. on July 18, 2018, and shall remain there until the conclusion of the hearing.

- The Court will also issue writs of habeas corpus *ad testificandum* for J.S.R. and V.F.B., who shall also be brought to Courtroom Two, 915 Lafayette Boulevard, Bridgeport, Connecticut, at 9:00 a.m. on July 18, 2018, and shall remain there until the conclusion of the hearing.

- The Government is directed to continue to facilitate video teleconferences between J.S.R. and his father, and between V.F.B. and her mother, on a daily basis between July 13, 2018, and July 18, 2018. The Court will determine whether to continue this contact at the July 18th hearing.

SO ORDERED at Bridgeport, Connecticut, this 13th day of July, 2018.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge